Filed 5/6/14  In re Jamie M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re JAMIE M., a Person Coming Under the Juvenile Court Law. | C074044 |
| SACRAMENTO COUNTY DEPARTMENT, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JAMIE M., <br><br> Defendant and Respondent. | (Super. Ct. No. JD233185) |

Sacramento County Department of Health and Human Services (Department) appeals from the judgment of the juvenile court adjudging the minor, Jamie M. a dependent child and from a subsequent hearing reviewing Jamie M.'s nonminor dependent status.  (Welf. & Inst. Code, §§ 358, 360, 395 [unless otherwise stated, statutory references that follow are to the Welfare and Institutions Code].)  The

1

Department contends (1) evidence did not support the court's finding of due diligence in noticing the parents, (2) the court erred in conducting the disposition hearing without a social study report and a case plan, (3) the court violated the Indian Child Welfare Act (ICWA) [25 U.S.C. § 1901 et seq.] for failing to wait 10 days after notice of the proceedings was received by the Bureau of Indian Affairs (BIA) before holding the juris hearing and (4) that the California Fostering Connections to Success Act (Assem. Bill No. 12 (2009-2010 Reg. Sess.); Assem. Bill No. 212 (2011-2012 Reg. Sess.)), which authorized the nonminor dependent status and programs, was not intended to apply to individuals in Jamie's situation. We conclude that the Department lacked standing to assert the notice claims and failed to object to the other matters in the juvenile court, thereby forfeiting those issues. We affirm the judgment and orders of the juvenile court.

## FACTS AND PROCEEDINGS

On April 4, 2013, less than two weeks before Jamie's 18th birthday, the Department filed a petition alleging she came within the provisions of section 300, subdivisions (b) and (g) because her mother was unwilling to provide care for her and had refused her shelter for 11 months, leaving her without support. The whereabouts of Jamie's father were unknown and relatives were no longer able to provide for her.

The detention report stated Jamie had run away from her paternal aunt's home where she had been staying for several months. When taken into protective custody Jamie reported that she previously lived with her mother in Fresno and was sexually abused by her stepfather for several years. Jamie said she became pregnant as a result of the abuse and her mother made her get an abortion. Both the police and Child Protective Services were involved at the time but, when contacted, Fresno County would not accept a request to have Jamie returned there and informed the social worker that the results of the Fresno County investigation of the allegations of sexual abuse were inconclusive.

2

In April 2012, Jamie's mother made her leave the home. Thereafter, Jamie lived with her maternal grandmother until December 2012. Jamie's father was contacted and he sent her to live with the paternal grandmother who was ill. In January 2013, Jamie located a paternal aunt in Sacramento and sought her assistance. The paternal aunt enrolled her in school and tried to be appointed as Jamie's guardian. However, Jamie's mother had to agree to the guardianship and could not be located, although Jamie and the aunt went to the mother's last known address in Fresno, found no contact information for her there and were also unable to locate her using Facebook. The social worker spoke to the paternal aunt, a licensed foster parent, who stated she was unable to continue to care for the minor without services. She confirmed she had attempted to get a guardianship and made efforts to secure medical treatment and a stipend for the minor which would expire on her 18th birthday. The paternal aunt stated there was some Indian ancestry but the family was not registered with any tribe. Notice of the initial hearing was given to the paternal aunt. There was no information about the location of either of the parents.

At the detention hearing, the court found the location of the parents was unknown and the Department had made reasonable efforts to give notice to the parents, ordered Jamie detained and noted that the petition would be dismissed at the next hearing scheduled for April 26, 2013, because Jamie would no longer be a minor. The paternal aunt was not sure of Indian ancestry. She knew the family was from Oklahoma and that her great grandmother was Indian but stated that Jamie was not registered with a tribe. Jamie's attorney observed that the timeline for noticing both the parents and ICWA was a problem and nothing could be done prior to Jamie's 18th birthday.

In April 2013, the pre-jurisdiction hearing was advanced, on the court's own motion, by three days, to the day before Jamie's 18th birthday. At the hearing, the court discussed the notice issues and whether they should serve as a bar to taking jurisdiction over Jamie. The court found, based on information drawn from the detention report, the detention hearing and minor's counsel's statements, that there had been due diligence in

3

attempting to provide notice to the parents. The court then announced its proposed findings and orders, i.e., to sustain the petition based on the facts in the detention report, remove Jamie from parental custody and place her with the paternal aunt. The following colloquy occurred:

"COURT: So before I do that Mr. Manoogian, [Deputy County Counsel on behalf of the Department] I understand you want to make an objection?

"MR. MANOOGIAN: That's correct, Your Honor, just a general objection. I appreciate the Court explaining the decision and reasons therefore. I'm covering this for Deputy County Counsel Miss Viarnes who staffed this with my office, and I would just note an objection, and nothing further.

"COURT: Objection to what?

"MR. MANOOGIAN: To making Jamie a dependent today, Your Honor. I -- as I mentioned I explained -- the Court explained the reasoning, but the Department views that the lack of 291 notice [notice to parents of the proceedings] and lack of ICWA noticing, having heard the Court's comments, the Department is making an objection on that basis. That's all I have."

The court ordered noticing to proceed in order to provide Jamie the option to work with the tribe if one existed. The court made oral findings and orders in accordance with those earlier proposed, finding the evidence supported jurisdiction and removal, adjudging Jamie a dependent of the court and placing her with the paternal aunt. The court ordered services for the parents, found that Jamie planned to attend high school, that the required documents had not yet been provided to her but would be, that the benefits of remaining under the jurisdiction of the court as a nonminor dependent had been explained to her and found that the dependency would continue under the court's jurisdiction after her 18th birthday. The court set a nonminor dependent status review hearing for April 22, 2013, to review the written orders memorializing the oral

4

pronouncement of jurisdiction, disposition and nonminor dependent status. At that hearing, the court adopted the written orders and set an ICWA notice compliance hearing.

The Department filed a notice of appeal on June 5, 2013, from the orders entered on April 15 and April 22, 2013.

We granted respondent's motion to augment with a declaration of the ICWA paralegal demonstrating compliance with ICWA notice filed May 9, 2013. The paralegal contacted the paternal aunt who had found no trace of Indian ancestry in the family history but provided identity information for both parents to facilitate completion of a notice form. The paralegal prepared and sent the notice to the Bureau of Indian Affairs (BIA). On May 29, 2013, the paralegal filed the return receipt and response from the BIA. In August 2013, the court found the Department had complied with ICWA notice requirements. Subsequently, a second paralegal determined notice and inquiry were inadequate and called the mother, the maternal grandmother, a maternal uncle and the father, leaving messages for each but getting no response. The paralegal also called the paternal aunt who volunteered no further information. After receiving additional contact information, the paralegal again called the maternal grandmother who claimed Blackfeet and Choctaw heritage and provided family information. The paralegal also contacted the paternal grandmother who claimed Indian ancestry but refused to provide further information. The paralegal tried, but again was unable to contact the mother and in September 2013, sent an amended notice with the information secured from the family members to the Blackfeet tribe, the three Choctaw tribes and the mother. By October 2013, one Choctaw tribe responded that Jamie was not eligible for membership and the other tribes had not responded.

DISCUSSION

I

*Notice to the Parents and ICWA Notice*

The Department contends the court erred in finding there was due diligence in the attempts made to locate the parents. The Department further asserts that the court disregarded the notice provisions of the ICWA because the court could not proceed with the jurisdiction/disposition hearing until 10 days after receipt of notice of the proceedings by the tribe. Both arguments are a function of proper notice, the first involving notice to the parents and the second notice to the BIA or any possible Indian tribes.

A.      *Notice to the Parents*

Section 291 provides the procedure for giving notice of hearings following the initial petition hearing to the parents and other specified individuals if the parent's residence is unknown. (§ 291 subd. (a).) When the child is detained, the time for notice can be as short as 24 hours. (§ 291, subd. (c)(1).) The purpose of giving notice of the proceeding to parents, guardians and siblings is to provide an opportunity to be heard and defend against the allegations. (*In re B.G.* (1974) 11 Cal.3d 679, 689.) As such, the right to notice of the proceedings is personal to those individuals listed in the statute. (§ 291, subd. (a); *In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193-1194.) Standing is jurisdictional and a party may not raise issues which only affect the rights of another party. (*In re Frank L.* (2000) 81 Cal.App.4th 700, 703.) Notice is such an issue. The Department lacks standing to raise defects in the notice and noticing procedure as the issues can only be asserted by the parents.

B.      *ICWA Notice*

If, after the petition is filed, the court "knows or has reason to know that an Indian child is involved," notice of the pending proceeding and the right to intervene must be sent to the tribe or the BIA if the tribal affiliation is not known. (25 U.S.C. § 1912;

6

§ 224.2; Cal. Rules of Court, rule 5.481(b).) Failure to comply with notice requirements is grounds for invalidating the proceedings. However, ICWA limits standing to object to errors in giving notice and applying the substantive aspects of ICWA to the parents, the minor and the tribe. (25 U.S.C. § 1914; Cal. Rules of Court, rule 5.486(a).) The notice provisions of the ICWA are for the benefit of the tribe and the minor. (25 U.S.C. § 1902; § 224, subd. (a).) Thus, the Department lacks standing to assert any failure to comply with the provisions or procedures for notice to any tribe or the BIA.

## II

### *The Social Study Report and Case Plan*

The Department argues the court erred in conducting a disposition hearing without the statutorily required social study report and case plan. The Department contends proceeding in the absence of a full investigation and analysis was prejudicial to the parents and to the Department which could not properly fulfill its function.

A social study prepared by the petitioning agency along with any other admissible evidence may be received in evidence on the question of jurisdiction. (§ 355, subds. (a) and (b).) "Before determining the appropriate disposition, the court shall receive in evidence the social study of the child made by the social worker . . . ." The social study is also to include the individual child's case plan. (§ 358, subd. (b).)

Here, the court considered the detention report to constitute the required social study at disposition. At no time did the Department object that this did not meet the requirements of the necessary social study, that it did not have time to prepare a proper report or that the court could not proceed without such a report and case plan. Neither did the Department request a continuance to fully investigate and report the circumstances of the case to the court. Failure to object has forfeited this contention. (*In re Dakota S*. (2000) 85 Cal.App.4th 494, 501-502.)

7

The court will excuse a failure to object if objection would be futile. (*People v. Hill* (1998) 17 Cal.4th 800, 820.) However, the record does not suggest that such an objection would have been futile here. After giving its proposed ruling, the court invited the Department to state its objections and, when only a general objection was made, asked for further clarification of the basis for the objection. Counsel for the Department limited the objections to the statutory requirements to provide notice to the parents and the BIA. Counsel did not suggest that the basis for jurisdiction might be faulty, that the detention report was inadequate to support jurisdiction and disposition findings and orders or that the proceeding might be defective for lack of a proper report. Further, counsel made no effort to have the social worker testify to amplify any areas of concern. We cannot say on this record that such objections or attempts to provide additional information would have been futile. Accordingly, the Department forfeited this issue.

### III

### *Legislative Intent*

The Department argues that the findings and orders made by the court relating to Jamie's nonminor dependant status are contrary to the intent of the Legislature when enacting the enabling statute.

Once again, the Department failed to litigate the issue below. It did not object that Jamie delayed in seeking dependent status and only did so to be able to take advantage of programs and funding available to a nonminor dependent. Further, it did not raise any question of whether the statute would apply to Jamie or whether proper procedures were followed in entering findings and orders and setting a nonminor dependent status review hearing. The Department did not attempt to discuss the intent of the statute and how it might not apply to this minor. Indeed, the Department, with the exception of agreeing with the court about the orders presented at the April 22, 2013, hearing was little more than a silent observer of the proceedings. Any issues relating to the application of the

8

nonminor dependent statues to Jamie have been waived by the Department.  (*In re Dakota S.*, *supra*, 85 Cal.App.4th at pp. 501-502.)

DISPOSITION

The judgment and orders of the juvenile court are affirmed.


      HULL      , J.


We concur:


      NICHOLSON      , Acting P. J.


      HOCH      , J.